**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **KRATOS DEFENSE & ROCKET SUPPORT SERVICES, INC.,** | * * * * | |
| **Plaintiff,** | * | |
| v. | * * | Civil Case No. SAG-18-03373 |
| **VOR TECHNOLOGY,** *et al.,* | * * | |
| **Defendants.** | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Kratos Defense & Rocket Support Services, Inc. ("Kratos") filed an Amended Complaint against VOR Technology ("VOR"), Anthony Lawrence ("Lawrence"), and Doe Defendants 1-10 ("Doe Defendants) (collectively, "Defendants"), alleging claims relating to certain contractual obligations. ECF 30. Kratos, on one hand, and VOR and Lawrence, on the other hand, have filed cross-motions for partial summary judgment. ECF 41, 42. Both sides have opposed the other parties' dispositive motion, and Kratos also filed a reply. ECF 45, 46, 47. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Kratos's Motion for Partial Summary Judgment will be granted, and VOR's and Lawrence's Motion for Partial Summary Judgment will be granted in part and denied in part.

**I.    FACTUAL BACKGROUND**

The United States Air Force ("Air Force") entered into a contract ("the Prime Contract") with VOR in 2017. ECF 41-2 No. 9. Under the Prime Contract, VOR would provide engineering and technical personnel to perform work on Air Force aircraft components at Robins Air Force Base in Georgia. *Id.* VOR entered into a subcontract ("the Subcontract") with Kratos, under which Kratos would provide engineering, technical, and other personnel support for the Prime Contract

at Robins Air Force Base. *See generally* ECF 41-5. The Subcontract provided, *inter alia*, that Kratos would submit periodic invoices to VOR for the services rendered, and VOR would make payment on any invoice submitted within 45 days of receipt. *Id.* at page 7 (Article 11).

In compliance with Article 11 of the subcontract, Kratos provided monthly invoices to VOR. ECF 41-7 No. 5 (VOR admission). Each month, VOR incorporated the amount of Kratos's invoice into its own invoice, and sent the Air Force a single invoice for the work performed by both companies. ECF 41-13 (Casto Dep.) at 43:19-44:7. VOR then assigned its invoices to "a factoring company," which made an immediate cash payment to VOR of the invoice amount, less a percentage that the factoring company charged for the upfront payment. *Id.* at 28:20-29:15, 43:19-44-7. Although VOR received payments from the factoring company, VOR did not always use the money to pay Kratos for its share of the invoiced work. *Id.* at 44:8-12 (responding "yes" when asked if VOR would use payment for other purposes).

VOR does not dispute the accuracy of the invoices Kratos submitted. ECF 41-6 (Lawrence Dep.) at 47:2-20; 77:5-78:2 (stating "No" when asked if he has any factual basis to contest the accuracy of invoices). While VOR initially paid Kratos's invoices in a timely fashion, beginning in or around January, 2018, VOR fell behind in its payments to Kratos. ECF 41-13 at 42:13-21. VOR's cash flow problems were severe, and VOR's management began to disagree about which expenses should be paid. *Id.* at 39:14-41:4 ("[W]e talked about who was going to get paid, what bills were going to be paid"), 27:17-24, 137:5-138:3. VOR's then-Chief Financial Officer and General Counsel, Daniel Casto, believed VOR should pay Kratos, but Lawrence disagreed. *Id.* at 137:5-138:3. Casto left VOR on March 31, 2018. *Id.* at 22:21-25, 26:25-27:9. During Casto's tenure, he did not participate in any discussions suggesting that Kratos was failing to perform its obligations under the Subcontract. *Id.* at 34:15-18.

On April 2, 2018, Kratos emailed Lawrence to discuss the debt VOR owed, which amounted to $658,584.39 at that time. ECF 41-17 at 4. Lawrence promptly responded, representing that VOR imminently expected to receive funding from a $2.5 million loan from the State of Maryland. *Id.* at 3. Lawrence stated, "In the meantime, we will be making invoice payments throughout the week to settle our account," and "remaining payments and all future payments will be paid on or before the due dates." *Id.* He concluded, "I apologize for not having all the funds to you today as promised but we will make sure to have the remaining balance to you very soon. Thank you again for your patience." *Id.*

On April 26, 2018, Sharon Tarlton, the Director of Administration at VOR, emailed Kratos to say that the loans were being finalized and, "Upon receipt, it is VOR's intent to pay KRATOS invoices due, at once." ECF 41-18 at 3. However, by May 21, 2018, Kratos had not heard anything further. *Id.* at 2. On or about that date, Jack Trumbull, the Vice President of Business Operations and Finance for Kratos, spoke with Lawrence by phone. *Id.* Lawrence told Trumbull that he was "working on making payment by the end of this week." *Id.* On or about May 29, 2018, VOR made a payment of $97,629.14. *See* ECF 47-5; ECF 41-19 at 4 ("Great news, we received the $97K payment yesterday afternoon.").

On June 8, 2018, Lawrence emailed Trumbull to advise that VOR had sent another payment, amounting to $146,161. ECF 41-19 at 2. Lawrence stated that the amount was "less than what you were expecting but we are getting there. We will have the payment schedule to you soon." *Id.* Kratos received the payment of $146,161 on or about June 11, 2018. ECF 47-5.

On July 23, 2018, Lawrence emailed Trumbull and stated, "VOR's new CFO, David Goldstein (cc'ed), will be developing a payment schedule within the next week. Once completed, he will send over. Once the plan is developed, we will hold to it." ECF 41-20 at 4.

In August, 2018, Kratos Division President David Carter met with VOR's Chief Financial Officer, Wilbert Williams, to discuss an alleged workshare imbalance at Robins Air Force Base. ECF 41-16 (Williams Dep.) at 18:21-19:8. Article 41 of the Subcontract provided, "The workshare for Subcontractor under the contract will be a target of 49% of the resulting contract revenue. VOR and Subcontractor will no less than annually review the actual work share versus target work share and re-distribute labor position as needed." ECF 41-5 at 25. Because Kratos's work share, as of the date of the meeting, exceeded 49%, Williams, for VOR, proposed "reducing Kratos's personnel, you know, for a period of, say, a year and, in that process of doing that, it would not only bring the contract back into compliance, but also allow VOR to start to recoup a bigger percentage of the revenue and then use a portion of that revenue to start paying down some of the back payments as was stated." ECF 41-16 at 59:17-60:14. However, Kratos and VOR did not reach an agreement on how to address the workshare imbalance. *Id.* at 24:22-25:10.

On August 17, 2018, Kratos sent VOR a "Notice of Material Breach." ECF 41-21 at 3 (email from Marie Mendoza); ECF 41-22. The incorporated "Accounts Receivable Aging Report" in the Notice reflected a then-balance of $920,668.42 owed to Kratos. ECF 41-22. In the negotiations that followed, Goldstein, VOR's CFO, agreed that VOR would "develop a plan for repayment" and "[p]ay Kratos for July and all invoices going forward as soon as VOR is paid." ECF 41-21 at 3. On August 31, 2018, Kratos exercised its option to renew the Subcontract for another six months. ECF 42-6.

In August or September of 2018, Kratos representatives met twice with the Air Force about Kratos's payment issues with VOR. ECF 46-5 at 49:5-20; ECF 46-2 at 32:2-33:18. On September 7, 2018, Goldstein emailed the Air Force representative in charge of the Prime Contract, stating that VOR "stands behind" the Prime Contract and was "in constant communication with KRATOS

4

related to the outstanding balance." ECF 41-23 at 4. Goldstein also told the Air Force that VOR "was planning on making a significant payment today (9/7/18) and will honor that payment next week." *Id.*

On September 13, 2018, Carter sent Lawrence an email confirming a telephone call in which Lawrence asserted "that VOR will pay 100% of the outstanding debt owed to Kratos." ECF 41-24. Lawrence did not dispute the accuracy of that statement at his deposition. *See* ECF 41-6 at 75:14-76:10.

At the end of September, 2018, Carter told VOR and the Air Force that Kratos would have to furlough its employees at Robins Air Force Base, because of the lack of payment from VOR. ECF 41-3 at 32:10-33:10. When VOR made a $100,000 payment, Carter agreed to keep the Kratos employees on site for two more weeks. *Id.* at 110:8-21, 111:12-112:6, 115:3-17. Carter told Goldstein that additional partial payments of at least $100,000 would "extend the non-furlough period." *Id.* at 112:7-13.

On October 2, 2018, the Air Force sent a Performance Assurance Letter to VOR. ECF 41-25 at 5-6. In response, Williams informed the Air Force that it had invited Kratos to have "initial discussions on a proposed plan of action(s) for repayment of subcontractor services and support" under the Prime Contract. *Id.* at 4-6. However, on or about October 5, 2018, VOR decided to walk away from the Prime Contract. *Id.* at 2-3.

Kratos filed the instant lawsuit on October 31, 2018. ECF 1. VOR has not made any payments to Kratos since its $100,000 payment in September, 2018. *See* ECF 47-5. Based on Kratos's documented calculations, the total amount owed today is $1,461,749.92. *Id.*

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial."  *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor.  *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another."  *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.  *Id.* at 352.  The non-moving party "must produce competent evidence on each element of [its] claim."  *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial."  *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010)

(unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**III.   ANALYSIS**

Kratos's Amended Complaint includes six counts:  Count I (Breach of Contract against VOR and Lawrence); Count II (Unjust Enrichment against all Defendants); Count III (Negligent Misrepresentation against VOR and Lawrence); Count IV (Constructive Fraud against VOR and Lawrence); Count V (Nullification of Fraudulent Conveyances against all Defendants); and Count VI (Account Stated against VOR).  ECF 30.  Kratos's motion seeks summary judgment, against VOR only, on Counts I and VI (breach of contract and account stated).  ECF 41.  VOR's and Lawrence's motion seeks summary judgment on all counts, except Count I.  ECF 42.  In Kratos's opposition to VOR's and Lawrence's motion, Kratos expressly does not oppose summary judgment on Counts II or III.  ECF 45 at 2 n.1.  Accordingly, VOR's and Lawrence's motion for summary judgment on Counts II and III will be granted.  The remaining merits of the parties' respective motions are addressed below.

**A.  Kratos's Motion**

**1.  Count I (Breach of Contract)**

Kratos alleges that VOR materially breached the Subcontract by failing to make timely payments. To establish a breach of contract, a plaintiff must prove three elements: 1) the existence of a contractual obligation owed by the defendant; 2) that the plaintiff performed all of its material contractual obligations; and 3) that the defendant materially breached the obligation it owed.  *See*

*RRC Ne., LLC. v. BAA Md., Inc.,* 413 Md. 638, 655 (2010); *see also Collins/Snoops Assocs., Inv. V. CJF, LLC*, 190 Md.App. 146, 161 (2010).

Here, VOR contests the second element, alleging that Kratos did not perform all of its material contractual obligations, because it breached Articles 41, 21, and 30 of the Subcontract. *See generally* ECF 46. In assessing the merits of VOR's defense, a brief review of each relevant Article is warranted.

Article 41 is the provision entitled "Subcontractor Workshare," which requires, as noted above, Kratos to maintain "a target of 49% of the resulting contract revenue." ECF 41-5 at 25. While the parties dispute, to a relatively minor degree, when the workshare imbalance was corrected, the Subcontract's language does not allocate responsibility for a workshare imbalance to either party, and does not deem an existing imbalance to be a material breach of the agreement by either side. *Id.* In fact, the Subcontract clearly contemplates that such imbalances may occur, and will be periodically reviewed and possibly adjusted by the companies. *See id.* ("VOR and Subcontractor will no less than annually review the actual work share versus target work share and re-distribute labor positions as needed."). Thus, the workshare imbalance does not constitute a material breach of a contractual obligation owed by Kratos.

Article 30 requires VOR and Kratos "to enter into a negotiation to resolve any dispute. Both parties agree to negotiate in good faith to reach a mutually agreeable settlement within a reasonable period of time." ECF 41-5 at 21. Article 30 further provides, in relevant part, "Formal proceedings for the resolution of the dispute may not be commenced until . . . thirty (30) calendar days have passed since the initial request to negotiate the dispute was made. . ." *Id.* at 21-2. As described above, Kratos submitted its Notice of Material Breach on August 17, 2018. After this Notice, extensive discussions and negotiations ensued between the two sides. VOR vaguely

asserts that Kratos did not engage in good faith negotiations because "Although VOR tried repeatedly to find common ground, Kratos did not." *See* ECF 46-1 at 7. However, the record does not support this assertion.

For example, Goldstein emailed the Air Force in September, 2018, to say that Kratos and VOR had been "in constant communication" about the outstanding balance. ECF 41-23 at 4. In fact, Goldstein, Williams, and Lawrence (on behalf of VOR) had several telephone conversations with Carter (on behalf of Kratos), regarding repayment options. *See, e.g.*, ECF 41-21. Good faith negotiation does not require the parties to reach a resolution. *See E. Savings Bank, F.S.B. v. Nardo*, 85 Md.App. 702, 712 (1991). Indeed, while the Subcontract mandates good faith negotiation, it does not require any particular degree or manner of compromise. While VOR may not have been satisfied with the outcome of those discussions, more than thirty (30) days elapsed before Kratos filed its Complaint on October 31, 2018. The parties engaged in a good faith negotiation of payment terms, evidenced by the example of Kratos's agreement not to furlough its employees in late September in exchange for VOR's $100,000 payment, and its offer of a future agreement to keep its employees on the job so long as meaningful payments were being made. The record, then, does not suggest a genuine issue of material fact regarding any violation by Kratos of Article 30.

VOR also argues that Kratos violated Article 21, which is entitled "Customer Interface and Publicity." ECF 41-5 at 16. That Article provides:

> Subcontractor shall not communicate with Customer personnel with respect to the Prime Contract and/or Agreement issues, pricing, specific tasking or Subcontractor's performance under the work related to this Agreement, without the prior written consent of VOR . . . Any deviation from this provision by Subcontractor will be considered a material breach of this Agreement.

ECF 41-5 at Article 21(a).

Kratos's employee, Michelle Furlough, acknowledged that she was present at two meetings in August or September of 2018, in which Kratos discussed with the Air Force that VOR "wasn't paying its bills." ECF 46-5 at 49:5-20.  Carter also testified that he had communicated with the Air Force, twice in September, 2018, regarding issues relating to the Subcontract. ECF 46-2 at 32:2-33:18.

Importantly, the "breach" by Kratos was necessitated by VOR's initial breach, *i.e.*, by VOR's failure to pay invoices within 45 days, as required by Article 10 of the subcontract. VOR and Kratos agree that one party's breach can excuse the other party from fulfilling contractual obligations. ECF 46-1 at 10, ECF 41 at 20. However, VOR appears to contend that its breach was not of the requisite "degree and specific nature" to justify excusing Kratos's compliance with contractual provisions. ECF 46-1 at 10–11 (citing *Ady v. Jenkins*, 133 Md. 36 (1918). The Court disagrees. VOR not only failed to pay on multiple invoices supplied by Kratos, but also (1) incorporated these amounts into invoices sent to the Air Force, and (2) collected immediate cash payment from a factoring company.  Furthermore, Kratos did not repudiate the subcontract entirely, as was arguably warranted by VOR's delinquency. Instead, Kratos's breach was primarily to warn the Air Force about potential consequences arising from VOR's nonpayment on the subcontract.  Accordingly, VOR's failure to comply with Article 11 constituted a material breach, thus excusing Kratos from complying with Article 21(a).

In any event, even if Kratos's unilateral contact with the Air Force constituted a material breach of the Subcontract, while it may have given VOR cause to terminate the Subcontract or to make its own claim for damages, it would not erase VOR's liability to Kratos for its own, pre-existing breach of its obligations to make the payments it owed.  *See Fromm Sales Co. v. Troy Sunshades Co.,* 222 Md. 229, 233 (1960) ("The failure to make payments under an agreement such

as this indubitably constitutes a material breach in the absence of a showing of justification or excuse. The burden of showing such justification or excuse is on the party who first breached the agreement and thereafter seeks to defend his action.") (internal citations omitted)); *Barufaldi v. Ocean City Chamber of Commerce, Inc.,* 196 Md.App. 1, 22 (2010) ("That [the plaintiff] also may have subsequently breached the Agreement and caused damages is properly the subject of [the defendant's] counterclaim and does not affect his independent right to recover for a breach of the compensation provisions for work already performed."). VOR cites no cases, and the Court is not aware of any cases, standing for the proposition that a subsequent material breach of an agreement's terms by the plaintiff can forgive a defendant's earlier failure to pay the amount it owes for work performed. Accordingly, VOR's asserted "affirmative defenses" do not actually constitute defenses to Kratos's well-founded breach of contract claim.

Finally, VOR contests the amount of damages claimed by Kratos, alleging that there is a factual dispute regarding whether its payments of $97,000 and $100,000 were considered. ECF 46-1 at 14-15. The documentation in evidence, however, reflects both of those payments having been properly credited to VOR's account, before the total of $1,461,749.92 was calculated. *See, e.g.,* ECF 47-5 (table reflecting credits for the $97,629.14 and $100,000 payments, leaving the open amount of $1,461,749.92). Indeed, Lawrence previously conceded that the amount owed on the invoices was "roughly $1.4 million dollars." *See* ECF 47-3 at 47:18–48:2. Accordingly, there is no genuine issue of material fact about the amount due. Kratos is entitled to summary judgment on its breach of contract claim in the amount of $1,461,749.92, plus pre-judgment and post-judgment interest according to governing law.

   2.   **Count VI (Account Stated)**

11

Although duplicative of the relief sought and granted for Count One, in the alternative, summary judgment would have been appropriate in Kratos's favor on Count VI in the amount of $920,668.42. That figure, and the invoice detail supporting it, was reflected in the Notice of Material Breach Kratos sent to VOR on August 17, 2018. ECF 41-22. In response, Goldstein, the CFO of VOR, agreed to "develop a plan for repayment" and to "pay Kratos for July and all invoices going forward as soon as VOR is paid." ECF 41-21 at 2-3. Goldstein did not dispute the total amount owed. *Id.*

Under Maryland law, "an account stated is an agreement between the parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such a balance.'" *Radio Parts Ct. v. Lowry,* 125 B.R. 932, 943–44 (D. Md. 1991). The elements of a claim for amount stated include:

> (i)  A previous transaction(s) between the parties giving rise to the indebtedness from one to the other; (ii) a rendition of an account to the party sought to be charged reciting the amount of the present existing debt owed by one party to the other; and (iii) a promise, express or implied, to pay this balance.

*Wathen v. Pearce,* 175 Md. App. 651, 661 (1939). VOR contends that none of its representatives clearly assented to the amount owed. ECF 46-1 at 16–17. However, the third element, the express or implied promise, can be proved by "a failure within a reasonable time to object to the correctness of a stated sum." *Balt. Cnty. v. Archway Motors, Inc.,* 166 Md. App. 158, 166 (1977). Indeed, VOR concedes that a party's failure to object within a reasonable amount of time can qualify as an assent. ECF 46-1 at 17. The undisputed record evidence shows that VOR not only failed to object to the outstanding account balance of $920,668.42, but also told Kratos that it would try to work out a payment plan for this amount. In fact, VOR has identified no instance in the record, in which it objected to owing this amount, pursuant to the subcontract. Each of the elements of a

claim for Account Stated is satisfied. Accordingly, Kratos is also entitled to summary judgment in its favor on Count VI, but, given the Court's decision on Count I, no additional relief is warranted.

### B. VOR's and Lawrence's Motion for Partial Summary Judgment

#### 1. Counts IV and V (Constructive Fraud and Nullification of Fraudulent Conveyances)

With respect to Counts IV and V, constructive fraud and nullification of fraudulent conveyances, Kratos objects to this Court's consideration of summary judgment at this stage of the proceeding. ECF 45 at 5–7. Typically, summary judgment is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus. Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. *See, e.g.*, *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 341 (D. Md. 2011).

On November 22, 2019, which was supposed to be the discovery deadline, the parties submitted a joint status report noting that fact discovery had been completed, but VOR had retained an accounting firm to audit its finances, and the results had not yet been obtained. ECF 39 ("Fact discovery is complete, however, expert discovery is not complete."). As of the filing of its opposition to VOR's and Lawrence's Motion for Partial Summary Judgment, Kratos had not

received the audit results. *See* ECF 45 at 6. Accordingly, it submitted a Rule 56(d) affidavit attesting that 1) the audit results had not yet been completed; and 2) the results of the audit would be needed to determine "how the money VOR received on the Contract was distributed." ECF 45-1 ¶ 6. This Court concludes that Kratos has complied with the dictates of Rule 56(d), because it has explained why it cannot adduce evidence to oppose summary judgment on the relevant counts without further discovery. Further, VOR has not demonstrated that the evidence Kratos seeks to recover would be immaterial, with respect to the outcome of this case. *See Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006). Accordingly, VOR's motion for summary judgment as to Counts IV and V will be denied, without prejudice to VOR's right to refile its motion once the audit results have been produced to Kratos.

    **2. Count VI**

Because, as described above, summary judgment is warranted in Kratos's favor on the account stated claim in Count VI, VOR's corresponding motion seeking summary judgment in its favor will be denied.

**IV. CONCLUSION**

For the reasons set forth above, Kratos's Motion for Partial Summary Judgment, ECF 41, will be GRANTED, and VOR's Motion for Partial Summary Judgment, ECF 42, will be GRANTED IN PART AND DENIED IN PART. A separate Order follows.

Dated: April 15, 2020                                              /s/
                                                                    Stephanie A. Gallagher
                                                                    United States District Judge